**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Leist, et al., | No. CV-16-00314-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Academy Mortgage Corporation, et al., | |
| Defendants. | |

On December 31, 2015, Plaintiffs William and Lori Leist initiated this action by filing a complaint in the Maricopa County Superior Court. The complaint, as amended on February 2, 2016, asserts claims against Academy Mortgage Corporation, Corbin Olsen, and various unknown individuals and entities for negligent misrepresentation, common law fraud, and consumer fraud. Doc. 1-1 at 43-50 ("Complaint"). On February 3, 2016, Defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, asserting federal jurisdiction under 28 U.S.C. § 1332(a). Doc. 1. Defendants now move to dismiss the action for failure to state a claim upon which relief can be granted. Doc. 4. The motion has been fully briefed (Docs. 5, 8), and the Court concludes that oral argument will not aid in its decision.[1] For the reasons set forth below, Defendants' motion will be denied.

---

[1] Plaintiffs' request for oral argument is therefore denied. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I. Background.

The allegations in Plaintiff's complaint are accepted as true for purposes of this motion. On June 2, 2015, Scott Miller – an individual who is not party to this case – offered to purchase Plaintiffs' home for $850,000. Complaint ¶ 9. Miller indicated that he would obtain a loan for $680,000 at the close of escrow to cover the majority of the purchase price. *Id.* Miller attached a Pre-Qualification Information Form ("Pre-Qual Form" or "Form")[2] completed by Corbin Olsen, a loan officer employed by Academy Mortgage Company ("Academy"). *Id.*, ¶¶ 11, 14-16. The Form stated that Academy had determined that Miller was pre-qualified for a loan of $680,000 and a purchase price of up to $850,000 based on its review of Miller's paystubs, W-2s, personal tax returns, down payment/reserves documentation, and credit/liability documentation. Doc. 1-1 at 29. The Form stated that Miller was "not relying on the sale or lease of a property to qualify for this loan." *Id.* The Form included the following disclaimer: "This information does not constitute loan approval. All information provided must be approved by an underwriter, and any material change in the Buyer's credit or financial profile will render the pre-qualification null and void." *Id.*

Relying in large part on the Pre-Qual Form – and particularly on its representation that Miller would be able to pay the specified purchase price without selling his existing home – Plaintiffs accepted Miller's offer. Complaint ¶¶ 7, 25. On August 28, 2015, Olsen informed Miller's broker that Academy would be denying Miller's loan request. *Id.*, ¶¶ 27-28. Olsen wrote:

> We had hoped that the house would sell in Tulsa for the down payment which was our plan A. Plan B was that Michael [Miller had] lined up a home equity line of credit in order to access the equity for the down payment. However, now that the house is listed for sale, we cannot find any banks to access the equity in the home for the down payment. There are no other funds for the down payment and at this point we can't move forward without a down payment.

---

[2] The Pre-Qual Form is a standard form drafted by the Arizona Association of Realtors "to be used in conjunction with an AAR Residential Resale Real Estate Purchase Contract." Doc. 1-1 at 29.

*Id.*, ¶ 27 (alteration in complaint). As a result of Academy's denial, Miller was unable to purchase Plaintiffs' home. *Id.*, ¶ 30. Plaintiffs assert damages of at least $90,000 stemming from Miller's inability to close the sale. *Id.*, ¶ 32.

## II. Legal Standard.

A successful Rule 12(b)(6) motion must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must take the well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations do not enjoy a presumption of truth and are not sufficient to defeat a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires the plaintiff to identify "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citations omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

/ / /

/ / /

**III.     Analysis.**

   **A.     Disclaimer.**

Defendants argue that Plaintiffs' claims rest on a misunderstanding of the legal import of the Pre-Qual Form. Doc. 4 at 5-7. As Defendants note, the Form states that it "does not constitute loan approval" and that "any material change in the Buyer's credit or financial profile will render the pre-qualification null and void." Doc. 1-1 at 29. According to Defendants, this disclaimer defeats any argument that Defendants were obligated to provide Miller with a loan in the specified amount.

This argument misses the mark. Plaintiffs do not contend that Academy was obligated to provide Miller with a loan. Doc. 5 at 9 ("The Leists acknowledge that the Pre-Qualification Form was not a promise/guarantee that Mr. Miller would later be approved for a loan."). Instead, Plaintiffs argue that Defendants were obligated to represent Miller's financial status as accurately as possible based on the information reviewed. *Id.* at 10. The disclaimer does not purport to relieve Defendants of this obligation. Thus, Plaintiffs were entitled to rely on the representations about Miller's financial status included in the Pre-Qual Form.

Defendants cite several cases where courts refused to impose liability based on misrepresentations in a prequalification letter, but these cases do not help Defendants. In *Davis v. U.S. Bancorp.*, the Eighth Circuit held that a misrepresentation claim was properly subject to summary judgment because the plaintiff "failed to provide evidence that the specific information given to her [in the prequalification letter] was false." 383 F.3d 761, 769 (8th Cir. 2004). Far from suggesting that Plaintiffs' claims fail as a matter of law, *Davis* instructs that Plaintiffs should be given the opportunity to prove that the specific information in the Pre-Qual form was false.

Defendants' other cases stand for the proposition that a pre-qualification letter does not constitute a promise to provide a loan. *See Camat v. Fed. Nat'l Mortg. Ass'n*, No. CIV. 12-00149 SOM, 2012 WL 2370201, at *6 (D. Haw. June 22, 2012); *Ouimet v. Fitzsimmons*, 68 A.D.3d 1507, 1508 (N.Y. App. Div. 2009); *Whelan-Thieleke v. O'Brien*,

No. 318260, 2015 WL 160240, at *3 (Mich. Ct. App. Jan. 13, 2015) (unpublished opinion). But, as explained, Plaintiffs are not alleging that Defendants were obligated to provide Miller with a loan; they allege that Defendants were obligated to provide an accurate assessment of Miller's financial status based on the information they reviewed. Whether Defendants' representations about Miller's financial status were false on the date they were made is not a question that can be decided on a motion to dismiss.

### B.   Negligent Misrepresentation.

In Arizona, "'[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'" *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 813 (Ariz. 1987) (quoting Restatement (Second) of Torts § 552(1) (1977)). To recover under this doctrine, a plaintiff must generally show that she was a "foreseeable user" of the information – that is, that the defendant provided the information for her benefit or knew that the information would be supplied to her. *Id.* (citing Restatement (Second) of Torts § 552(2)(a)).

Defendants argue that they owed Plaintiffs no duty because there was no special relationship between the parties. Doc. 4 at 8. At one point, Arizona law did limit the tort of negligent misrepresentation to cases where the tortfeasor had a special relationship to the plaintiff. *See Arizona Title Ins. & Trust Co. v. O'Malley Lumber Co.*, 484 P.2d 639, 645 (Ariz. Ct. App. 1971). But after the Second Restatement was adopted in 1977, Arizona followed it in abandoning the special relationship requirement, *St. Joseph's Hosp.*, 742 P.2d at 813, as did other states that follow the Restatement. *See, e.g., Williams Ford, Inc. v. Hartford Courant Co.*, 657 A.2d 212, 222 (Conn. 1995) ("no special relationship is required to state a claim of negligent misrepresentation"). Arizona law now provides that a professional owes a duty to any "foreseeable user" of

information. *St. Joseph's Hosp.*, 742 P.2d at 813 (citing citing Restatement (Second) of Torts § 552(2)(a)). Plaintiffs have adequately alleged that they were foreseeable users of the information included in the Pre-Qual Form.

Next, Defendants argue that Plaintiffs fail to identify any representation of fact on which they might have relied. Doc. 4 at 9-10. The Court does not agree. Plaintiffs allege that Defendants represented that Miller would be able to purchase Plaintiffs' house without first selling his existing home. Complaint ¶ 22. That is a representation of fact which, if false at the time it was made, may support a negligent misrepresentation claim. Defendants also object that Plaintiffs have "provide[d] no facts to support [the inference] that any statements in the Pre-Qual Form were false at the time they were made." Doc. 4 at 7. Again, the Court disagrees. Plaintiffs allege that (1) on June 1, 2015, Defendants represented that Miller could pay the specified purchase price without selling or leasing his existing house; and (2) on August 28, 2015, Defendants denied Miller's loan request based on Miller's inability to sell or otherwise encumber his house. Complaint ¶¶ 17, 27. The Court can reasonably infer from these allegations that, as of June 1, 2015, Miller was not in a position to pay the specified purchase price without first selling or otherwise encumbering his existing house.[3]

Finally, Defendants argue that Plaintiffs have not adequately alleged negligence or proximate causation. Doc. 4 at 10.[4] The Court does not agree. As explained, it is reasonable to infer from the Plaintiffs' allegations that, contrary to Defendants' representations, Miller was not able to purchase Plaintiffs' house without selling his existing house as of June 1, 2015. It is also reasonable to infer that a person exercising ordinary care or competence would not have represented otherwise. And it is reasonable

---

[3] Defendants speculate that some change may have occurred in Miller's financial position between June and August 2015. Doc. 4 at 10 (suggesting that "in August 2015 when the loan went into underwriting Miller no longer had the reserves with which to provide the down payment"). A court cannot grant a motion to dismiss based on speculation or facts outside the complaint.

[4] Defendants also argue that Plaintiffs could not have justifiably relied on the information in the Pre-Qual Form because of its disclaimer. The Court has already rejected this argument.

to infer that the alleged misrepresentation proximately caused Plaintiffs to accept Miller's contract, that there was no intervening cause of Plaintiffs' decision, and that Plaintiffs' acceptance of the contract damaged them by limiting their ability to pursue other offers. Defendants object that Plaintiffs' allegations regarding negligence and proximate causation are "conclusory," (Doc. 8 at 7), but they do not explain what additional detail is required. This case concerns a relatively simple transaction. Plaintiffs have provided sufficient detail about this transaction to state a claim that is plausible on its face.

### C. Common Law Fraud.

"A claim for fraud requires proof of nine elements by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; (9) the hearer's consequent and proximate injury." *Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033-34 (Ariz. Ct. App. 2010) (citation omitted).

Defendants argue that the fraud claim against them must be dismissed because it fails to adequately allege intent. This argument is without merit. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs have alleged generally that Defendants acted with an intent to induce their reliance. Complaint ¶ 54. Defendants' intent to induce reliance can also be inferred from the Pre-Qual Form itself, which states that it is intended "to be used in conjunction with" a real estate contract. Doc. 1-1 at 29. The Court will not dismiss Plaintiffs' fraud claim.

### D. Consumer Fraud.

The Arizona Consumer Fraud Act ("ACFA") prohibits persons from engaging in "any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission in connection with

the sale or advertisement of any merchandise". A.R.S. § 44-1522(A). Arizona courts construe the ACFA to provide a right of action to any person damaged by a violation of the Act. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 521 P.2d 1119, 1122 (Ariz. 1974). To prevail, a plaintiff must establish that (1) the defendant made a misrepresentation in violation of the Act, and (2) defendant's conduct proximately caused plaintiff to suffer damages. *Parks v. Macro-Dynamics, Inc.*, 591 P.2d 1005, 1008 (Ariz. Ct. App. 1979). The plaintiff must also establish that the defendant acted intentionally. If the plaintiff complains of an unlawful act, she must show only that the defendant intended the act in question. *State ex rel. Horne v. AutoZone, Inc.*, 275 P.3d 1278, 1281 (Ariz. 2012). If the plaintiff complains of a material omission, however, she must establish that the omission was "made with intent that a consumer rely thereon." *Id.*

Defendants argue that Plaintiffs cannot state a claim under ACFA because the alleged misrepresentation was not made "in connection with the sale or advertisement of any merchandise." Doc. 4 at 15-17.[5] This argument is meritless. As Defendants acknowledge, "'merchandise' includes real estate under Arizona law," Doc. 4 at 16 (citing *Grimmelmann v. Pulte Home Corp.*, No. CV-08-1878-PHX-FJM, 2009 WL 1211771, at *2 (D. Ariz. May 1, 2009)), and "'[l]oan transactions constitute a 'sale' within the meaning of the ACFA.'" *Id.* (quoting *Henderson v. Chase Home Fin., LLC*, No. CV09-2461-PHX-JAT, 2010 WL 1962530, at *3 (D. Ariz. May 14, 2010)). It can hardly be disputed that Defendants' representations were made in connection with the sale of real estate – the Pre-Qual Form was attached to Miller's contract with Plaintiffs, and the Form itself states that it is "to be used in conjunction with an AAR Residential Resale Real Estate Purchase Contract." Doc. 1-1 at 29. Nor is there any dispute that Defendants' representations were made in connection with a potential loan transaction.

Defendants argue that "[the] lack of privity between Plaintiffs and Defendants with respect to any covered sale of merchandise removes this matter from the purview of

---

[5] Defendants also argue that Plaintiffs have not adequately alleged intent. The Court rejects this argument for the reasons set forth in the discussion of the common law fraud claim.

- 8 -

the ACFA." Doc. 4 at 17. They are mistaken. "'There is no requirement of privity in [Arizona] to maintain an action in tort,'" *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 339 (Ariz. Ct. App. 1996) (quoting *Donnelly Const. Co. v. Oberg/Hunt/Gilleland*, 677 P.2d 1292, 1295 (Ariz. 1984)), and nothing in the text of ACFA suggests that the Arizona legislature intended to depart from the common law in this regard.

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 4) is **denied**.

Dated this 20th day of April, 2016.

_____
David G. Campbell
United States District Judge